**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL NO. 6:25-CR-054-REW-01**

UNITED STATES OF AMERICA PLAINTIFF

V.

DUSTIN MURPHY DEFENDANT

* * * * *

**DEFENDANT'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

Defendant Dustin Murphy, by counsel, respectfully submits this Memorandum in advance of his sentencing hearing, currently scheduled for October 1, 2026. Mr. Murphy pleaded guilty, pursuant to a plea agreement, to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a). He does not minimize the seriousness of that offense, and he does not ask the Court to do so. He asks instead that the Court consider the whole of who he is: a thirty five year old man with a criminal history category of I and no prior felony conviction of any kind, a childhood marked by documented and severe physical and sexual abuse, a lifelong and largely untreated struggle with addiction that began in early childhood, a diagnosed and undertreated mental health history, a consistent work history spanning fifteen years, and the continued support of his mother, stepfather, grandfather, and extended family, in fashioning a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553(a).

As set forth more fully in Part II below, Mr. Murphy has filed a formal objection to the five-level enhancement applied under U.S.S.G. § 4B1.5(b)(1) at PIR paragraphs 19 and 35. That objection remains pending before the Court and is incorporated herein by reference. Because the resolution of that objection bears directly on the applicable guideline range, and

because, as explained in Part VI below, the statutory mandatory minimum sentence itself becomes the guideline sentence if the enhancement does not apply, the outcome of that objection is not a peripheral issue but the central variable in the Court's guideline analysis.

**II. PROCEDURAL HISTORY AND GUIDELINE CALCULATION**

Mr. Murphy was charged by indictment with three counts, including one count of production of child pornography in violation of 18 U.S.C. § 2251(a). PIR ¶¶ 1 to 3. He entered a guilty plea to Count One pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B), which this Court accepted on June 1, 2026, adopting the recommendation of United States Magistrate Judge Hanly A. Ingram. PIR ¶ 4. The government has agreed to dismiss the remaining counts of the indictment, Counts Two and Three, at sentencing. PIR ¶ 3.

The PIR calculates a base offense level of 32 under U.S.S.G. § 2G2.1(a), with a two-level increase under § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact, for an adjusted offense level of 34. PIR ¶¶ 13, 14, 18. The PIR then applies a five-level enhancement under U.S.S.G. § 4B1.5(b)(1), concluding that Mr. Murphy is a repeat and dangerous sex offender against minors because he engaged in a pattern of activity involving prohibited sexual conduct, for an adjusted offense level of 39. PIR ¶ 19. After a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the PIR arrives at a total offense level of 36. PIR ¶¶ 20 to 21.

Mr. Murphy has timely objected to the five-level enhancement at PIR paragraphs 19 and 35. See Defendant's Objections to the Presentence Investigation Report, filed contemporaneously herewith and incorporated by reference. As set forth in that filing, the United States has agreed that the allegation described at PIR paragraph 22 does not provide a sufficient evidentiary basis for the enhancement and will be dismissed at sentencing, and the probation officer has acknowledged that the enhancement now rests solely on the allegation described at PIR paragraph 8. Mr. Murphy respectfully submits that paragraph 8 alone cannot

satisfy the government's burden to prove, by a preponderance of the evidence and with sufficient indicia of reliability, that he engaged in prohibited sexual conduct on at least two separate occasions, as U.S.S.G. § 4B1.5, comment. (n.4(B)(i)), requires.

If the objection is sustained, the adjusted offense level before acceptance of responsibility is 34, not 39, and the total offense level after the three-level reduction is 31, not 36. Mr. Murphy has a criminal history score of one, based on a single 2023 misdemeanor conviction, placing him in Criminal History Category I. PIR ¶¶ 32, 34. At offense level 31 and Criminal History Category I, the advisory guideline range would be 108 to 135 months. Because the statutory minimum term of imprisonment on Count One is fifteen years, or 180 months, and 180 months exceeds the top of that range, U.S.S.G. § 5G1.1(b) provides that the statutory minimum becomes the guideline sentence. In other words, if the objection is sustained, the correctly calculated guideline sentence is 180 months, the same term Congress has already designated as the floor for this offense. The five-level enhancement is accordingly not a marginal adjustment; it is the entire reason the PIR's calculated range, 188 to 235 months, PIR ¶ 62, sits above the statutory minimum at all.

Mr. Murphy understands that the Court will resolve the pending objection before determining the applicable range, and, whichever range the Court ultimately adopts, he asks the Court to consider whether a sentence within that range, or any sentence above the statutory minimum, is greater than necessary to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## III. NATURE AND CIRCUMSTANCES OF THE OFFENSE

On February 27, 2025, Kentucky State Police detectives went to Mr. Murphy's residence to conduct a knock and talk after receiving information that he was potentially involved in illegal activity with minors. PIR ¶ 7. A forensic examination of Mr. Murphy's cell phone recovered a video, produced on or about July 2, 2024, depicting a sixteen-year-old

juvenile victim engaged in a sexual act with Mr. Murphy inside a vehicle. PIR ¶¶ 7, 8. The juvenile victim was subsequently interviewed and described a course of conduct that began with text messages in March of 2024 and culminated in the recorded offense. PIR ¶ 8.

Mr. Murphy does not ask this Court to look away from the seriousness of that conduct, and he does not do so here. An offense of this kind causes profound and lasting harm to the victim, and the sentence the Court imposes must reflect the seriousness of that harm, promote respect for the law, and provide just punishment. Mr. Murphy pleaded guilty to Count One without the necessity of a trial and he has accepted responsibility for his conduct. PIR ¶ 11.

Mr. Murphy respectfully notes, consistent with his pending objection to the PIR, that the government has agreed the separate allegation described at PIR paragraph 22, involving a different, unrelated minor, does not provide a sufficient evidentiary basis to support any enhancement and will be dismissed at sentencing. He further notes that the pending state charge described at PIR paragraph 45 arises from the same underlying conduct as the instant federal offense, not from any separate or additional incident, and that a state grand jury declined to return an indictment on that charge within sixty days, after which Mr. Murphy was released. PIR ¶ 45. Mr. Murphy offers the discussion in Part IV below not to excuse his conduct, but to give the Court the fuller picture that 18 U.S.C. § 3553(a) requires.

## IV. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Murphy was born in Harlan, Kentucky, and lived in the Harlan area for the great majority of his life. PIR ¶ 46. His parents divorced when he was two years old, and his father signed away his parental rights when Mr. Murphy was only five or six years old. Id. What childhood he had before that separation was marked by severe deprivation and abuse. His family struggled financially, and his father would shut off the electricity and water in the

family home, leaving Mr. Murphy and his mother without basic utilities for extended periods. Id.

Beginning at age three, and continuing almost every weekend thereafter, Mr. Murphy's father, an alcoholic, physically beat him with an open hand and the back of his hand. Id. His father's violence was not confined to Mr. Murphy. His father beat Mr. Murphy's mother with a belt, cut her face with a beer bottle, and held a knife to her throat, all while Mr. Murphy was present. Id. His father also attempted, while intoxicated, to force Mr. Murphy to touch him sexually. Id. On multiple occasions, Mr. Murphy witnessed his father sexually abuse his mother directly in front of him, tying her up, forcing intercourse upon her, and using an object on her while Mr. Murphy watched. Id. This is not a childhood that a five or six year old child should be asked to survive, and Mr. Murphy did not have the benefit of any intervening adult to protect him from it.

This history was independently corroborated by Mr. Murphy's mother, Rachel Howard, in a collateral interview with the probation officer, who confirmed the account of the defendant's childhood, childhood abuse, physical health, mental health, education, and employment history. PIR ¶ 48. Mr. Murphy's mother also confirmed that Mr. Murphy had threatened suicide on several occasions as an adult. Id. This history does not excuse Mr. Murphy's conduct. It does, however, bear directly on the Court's assessment of his history and characteristics under 18 U.S.C. § 3553(a)(1), and it provides essential context for the substance abuse and mental health history discussed below, both of which trace directly back to the abuse and neglect Mr. Murphy suffered as a young child.

This account is further corroborated by the letters of support attached as Exhibit A. Mr. Murphy's aunt, Lisa Newsome, who has known Mr. Murphy since he was a baby, writes that he "was abused by his father" and that his father "never treated him good," recalling that as a small child Mr. Murphy would cry and beg not to be dropped off at his father's. Exhibit

A (Letter of Lisa Newsome). Mr. Murphy's mother, Rachel Howard, writes in her own letter that her son's "life has tested him in ways no one should have to face," describing what she calls "the dark valleys of physical abuse and drug abuse" that she watched him walk through, and states that it was "heartbreaking" to witness. Exhibit A (Letter of Rachel Howard). These independent, contemporaneous accounts from the people who witnessed Mr. Murphy's childhood corroborate the history documented in the PIR.

Mr. Murphy reports a history of anxiety, depression, bipolar disorder, ADHD, and ADD. PIR ¶ 52. He received counseling beginning at age sixteen for several years, and was placed at the Trillium Center in Corbin, Kentucky, in 2005, when he was only fourteen years old. Id. He has expressed a desire for future mental health treatment. Id. Mr. Murphy respectfully submits that a fourteen-year-old child placed into residential treatment is a child already in crisis, and that the mental health conditions he carries into adulthood are not separate from the abuse and neglect described in Part IV.A above, but a continuation of it.

Mr. Murphy, age thirty-five, is in decent physical health but reports a heart condition, chronic neck pain stemming from a prior workplace injury, and high blood pressure. PIR ¶ 51. He is not currently prescribed medication and does not have a treating physician. Id. Mr. Murphy respectfully requests that the Court recommend appropriate medical evaluation and treatment, and continued mental health treatment, as part of any sentence imposed and as a condition of supervised release.

The PIR documents a substance abuse history that is both extensive and, by any measure, alarming in its origin. Mr. Murphy reports first using alcohol and marijuana at age eleven, and inhalants at age thirteen, years before he could legally drive a car. PIR ¶¶ 53 to 54. By his mid-twenties he was using cocaine, methamphetamine, and barbiturates, and his use of opiates, which began at age twenty four, progressed to fifteen to thirty milligrams of OxyContin daily, several pills a day, by his early thirties. Id. He also reports a period of daily

heroin use, by injection, continuing into 2023. Id. Mr. Murphy has identified opiates as his substance of choice and has told the probation officer that this addiction caused most of the problems in his life. PIR ¶ 55.

A child who begins using alcohol, marijuana, and inhalants before the age of fourteen is not a child making an isolated bad choice; he is a child self-medicating in the only way available to him against a home environment defined by violence, sexual abuse, and material deprivation. Mr. Murphy's mother independently attributed his difficulties in life to his substance abuse history. PIR ¶ 48. Despite the severity and duration of this history, Mr. Murphy's only documented substance abuse treatment came as a fourteen-year-old at the Trillium Center in 2005; he has never received adult, sustained substance abuse treatment matched to the severity of his addiction. He has expressed a desire for future treatment. PIR ¶ 55. Mr. Murphy respectfully requests that the Court recommend his participation in the Bureau of Prisons' Residential Drug Abuse Program, or an equivalent substance abuse treatment program, as part of any sentence imposed, and that substance abuse treatment be incorporated as a condition of supervised release.

Several of the letters attached as Exhibit A independently corroborate both the severity of this history and Mr. Murphy's genuine effort to overcome it. Karen Lindsey writes that Mr. Murphy "did have a real struggle with drugs and alcohol, but as far as I know, he has overcame those addictions," and states that she has "never known him to be violent." Exhibit A (Letter of Karen Lindsey). Reverend Ricky Harris, a preacher who has known Mr. Murphy for nineteen years, writes that Mr. Murphy "used to be a former drug user, but he got the help that he needed and fully recovered from drugs." Exhibit A (Letter of Rev. Ricky Harris). Stephanie Hampton, who describes Mr. Murphy as her brother in Christ of twenty-three years, writes that he "approaches life every day as a recovered addict with honesty and dedication to the Lord." Exhibit A (Letter of Stephanie Hampton). This is precisely the kind

of demonstrated capacity for recovery that supports directing Mr. Murphy toward structured substance abuse treatment as part of his sentence, rather than treating his addiction as simply an aggravating fact.

Mr. Murphy has a criminal history score of one and falls in the lowest applicable Criminal History Category, Category I. PIR ¶¶ 32, 34. His sole scored conviction is a 2023 misdemeanor conviction for theft by unlawful taking, for which he received a suspended ninety-day sentence and unsupervised probation. PIR ¶ 27. Every other prior contact with law enforcement reflected in the PIR consists either of minor traffic and fish and wildlife citations resolved by fine, PIR ¶¶ 25 to 30, or of charges that were dismissed outright, including domestic violence and assault charges from 2018, 2019, and 2023 involving Mr. Murphy's family members, none of which resulted in any conviction. PIR ¶¶ 41 to 44. Mr. Murphy has never before been convicted of a felony of any kind, and he has never before been convicted of any offense involving a minor.

Mr. Murphy graduated from Harlan County High School in 2009, received trade certificates from Southeast Community Technical College in 2010, and completed some college coursework at the University of Kentucky in 2011. PIR ¶ 56. He holds a Class A commercial driver's license, CPR and first aid certifications, and lawn care chemical application certifications. Id. He has worked consistently since 2011, first in lawn care, then as a grinder at Blue Diamond Factory, and for the past decade as a commercial truck driver, most recently earning $1,000 per week at Freedom Freight until his arrest in this case. PIR ¶ 57. The probation office itself concludes that Mr. Murphy is thirty-five years old, in decent health, and has a good work history, and that he should be able to gain employment in the future. PIR ¶ 60. Mr. Murphy respectfully submits that this consistent, decade-long employment record, maintained despite the severity of his substance abuse and mental health

struggles, reflects a genuine capacity for stability and productive work that the Court should weigh in fashioning an appropriate sentence.

Notwithstanding the seriousness of this offense, Mr. Murphy remains supported by his family. His mother, Rachel Murphy Howard, and his stepfather, Victor Howard, maintain daily contact with him and have confirmed their support throughout this case. PIR ¶ 47. His grandfather, Reed Murphy, Jr., likewise maintains daily contact, and Mr. Murphy's mother described him as always outside hunting with his grandfather during his upbringing. PIR ¶¶ 47 to 48. His aunt, Lisa Newsome, a nurse, maintains weekly contact and a close relationship. PIR ¶ 47. His mother reported that Mr. Murphy had been attending church in the period before his arrest and was, in her words, doing better. PIR ¶ 48.

Counsel received twenty-two letters of support submitted on Mr. Murphy's behalf by his family, his church community, and lifelong friends. Each letter acknowledges the seriousness of this case and does not ask the Court to overlook it. Each also reflects the author's direct, personal knowledge of Mr. Murphy over the course of years, and speaks to the whole of his history and characteristics that 18 U.S.C. § 3553(a)(1) requires the Court to consider, not only the worst thing he has done. Out of respect for the court’s time, a select portion of the letters received by counsel are submitted for the court’s review and consideration. The letters submitted are fully representative of all letters received and are individually identified in the Exhibit List below.

Mr. Murphy's mother, Rachel Howard, writes that despite everything, "we never let anything stop our love for one another," and asks the Court to consider that, given the opportunity to continue working and participating in constructive programs, she has "full confidence that he will remain on a productive, lawful path." Exhibit A (Letter of Rachel Howard). Mr. Murphy's aunt, Lisa Newsome, and his uncle, Michael Newsome, who has been married to her for twenty-five years, both describe him as a wonderful child who cared

for his aging grandmother and who remains, in Michael Newsome's words, someone who "loves his family" despite having "lost a many a battle" along the way. Exhibit A (Letters of Lisa Newsome and Michael Newsome). A close family friend, Angela Hensley, writes that Mr. Murphy and his grandfather are "more like best friends," that Mr. Murphy became his grandfather's "reason for carrying on" after the death of Mr. Murphy's grandmother, and that Mr. Murphy's absence "has been very hard for his family," particularly his grandfather, who "fears he will never again see his grandchild have freedom again." Exhibit A (Letter of Angela Hensley).

Numerous members of Mr. Murphy's church community likewise wrote in his support, including Pastor Steven Skidmore, Reverend Ricky Harris, and fellow congregants Eddie and Barbara Hampton, Stephanie Hampton, Tasha Howard, Karen Lindsey, and Christopher Noe, several of whom describe knowing Mr. Murphy for periods ranging from nineteen to twenty three years and describe him consistently as hardworking, respectful, and devoted to his faith. Exhibit A. A number of writers, including Tiffany Napier, wrote specifically to address Mr. Murphy's institutional placement, asking the Court to consider his work history, faith, family support, and nonviolent nature, and requesting that he be housed, if possible, in a setting that allows continued programming and that permits visitation by his aging mother and grandfather, who are not able to travel long distances. Exhibit A (Letters of Tiffany Napier and Ken and Sharon Wagers).

**V. RESTITUTION**

Restitution in this case is mandatory under 18 U.S.C. § 2259, in an amount that reflects Mr. Murphy's relative role in the causal process underlying the victim's losses, but in no event less than $3,000. PIR ¶ 74. As of the final PIR, the probation office had not received any impact statement, loss documentation, or restitution request from the victim or her representative, and the United States Attorney's Office Community Relations Unit has

indicated that the victim or her representative may decline to participate in determining a restitution award. PIR ¶¶ 75 to 76. The probation office has accordingly given notice, pursuant to 18 U.S.C. § 3664(d)(5), that the victim's losses are not ascertainable as of ten days before sentencing. PIR ¶ 76.

## VI. A SENTENCE AT THE STATUTORY MINIMUM IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY

Under 18 U.S.C. § 3553(a), the advisory guideline range, whatever it ultimately proves to be once the Court resolves the pending objection, is the starting point of the Court's analysis, not its endpoint. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide Mr. Murphy with needed correctional treatment, including mental health and substance abuse treatment, in the most effective manner. 18 U.S.C. § 3553(a)(2). Each of the considerations below supports a sentence at the statutory mandatory minimum of 180 months.

### A. Congress Has Already Set the Floor, and the Disputed Enhancement Is the Only Reason the Guideline Range Exceeds It

As set forth in Part II above, if the pending objection to the five-level enhancement is sustained, U.S.S.G. § 5G1.1(b) makes the statutory minimum of 180 months the guideline sentence itself, because the correctly calculated range of 108 to 135 months falls entirely below that minimum. Congress, in setting a mandatory minimum of fifteen years for this offense, has already made the judgment that a sentence of that length reflects the seriousness of the offense, provides just punishment, and affords adequate deterrence. A sentence at that floor is not a lenient sentence; it is a fifteen year term of imprisonment, to be followed by a term of supervised release of not less than five years and up to life, accompanied by the extensive conditions described in Part VI.C below. Even if the Court concludes that the

enhancement applies, the Court retains the discretion under *Kimbrough v. United States,* 552 U.S. 85, 101 (2007), and *Gall*, 552 U.S. at 49 to 51, to determine that a sentence above the statutory minimum is greater than necessary in light of the history and characteristics discussed in Part IV.

**B. Mr. Murphy's History and Characteristics Support a Sentence at the Statutory Minimum**

As set out in Part IV above, Mr. Murphy has no prior felony conviction of any kind and falls in the lowest Criminal History Category. He survived a childhood defined by severe physical abuse, material deprivation, and the direct witnessing of his father's sexual violence against his mother, along with his father's own attempt to sexually abuse him. He began using alcohol, marijuana, and inhalants before the age of fourteen, and his substance abuse history, culminating in daily opiate and injected heroin use, has never received treatment proportionate to its severity. He carries diagnosed, longstanding mental health conditions that have never been adequately addressed in adulthood. And he has, despite all of this, maintained a fifteen-year record of steady employment and retains the support of his mother, stepfather, grandfather, and extended family. These are precisely the individualized characteristics that 18 U.S.C. § 3553(a)(1) requires the Court to weigh, and they distinguish Mr. Murphy from an offender whose history reflects no comparable trauma, no comparable capacity for stable work, and no comparable family support.

**C. A Lengthy Term of Supervised Release, Not the Length of Incarceration Alone, Will Best Protect the Public and Ensure Treatment**

Mr. Murphy will be subject to a term of supervised release of not less than five years, up to life, accompanied by an extensive set of conditions specifically designed to prevent reoffense and to protect the public, including a prohibition on any contact with the victim, restrictions on contact with minors, computer and internet monitoring and restrictions,

mandatory sex offender treatment, periodic polygraph and psychosexual evaluation, and lifetime sex offender registration. PIR ¶¶ 64 to 66; 18 U.S.C. § 3583(k). These conditions, together with the substance abuse and mental health treatment discussed in Part IV above, are what will principally determine whether Mr. Murphy reoffends, and they will remain in place regardless of whether the Court imposes a sentence at the statutory minimum or above it. A sentence at the statutory minimum, coupled with a lengthy term of supervised release and its attendant conditions, is sufficient to protect the public and to deter Mr. Murphy from any future violation.

**D. A Sentence at the Statutory Minimum Avoids Unwarranted Disparity and Fully Satisfies the Purposes of Sentencing**

Section 3553(a)(6) requires the Court to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. A sentence at the statutory minimum of 180 months is, by definition, the sentence Congress has determined is warranted for every defendant convicted of this offense, regardless of the specific facts of the case, and it cannot create an unwarranted disparity with similarly situated offenders. To the contrary, imposing a sentence above that floor based on an enhancement that Mr. Murphy has specifically and substantially challenged, resting on a single, uncorroborated allegation after the government's concession that PIR paragraph 22 cannot support it, risks precisely the kind of disparity that § 3553(a)(6) is meant to avoid, by treating Mr. Murphy more severely than an offender with an identical offense of conviction but without a contested enhancement.

Judiciary Sentencing INformation (JSIN) "[D]uring the last five fiscal years (FY2021-2025), there were 32 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 36 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 32 defendants (100%) who received a

sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 180 month(s) and the median length of imprisonment imposed was 180 month(s).

**VII. CONCLUSION**

For the foregoing reasons, Mr. Murphy respectfully requests that the Court sustain his pending objection to the five level enhancement under U.S.S.G. § 4B1.5(b)(1), and impose a sentence at the statutory mandatory minimum of 180 months, together with a term of supervised release with the conditions recommended in the PIR, and that the Court resolve restitution as set forth in Part V above, deferring final determination if the victim's losses remain unascertained at the time of sentencing, consistent with 18 U.S.C. § 3664(d)(5).

Respectfully submitted,

/s/ Michael B. Fox
Michael B. Fox
Fox Law Office, PLLC
185 W. Tom T. Hall Blvd.
P.O. Box 1450
Olive Hill, Kentucky 41164
606-286-5351
mike@foxlaw1.com
*Attorney for Defendant Dustin Murphy*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September, 2026, a copy of the foregoing was filed electronically with the Clerk of Court through the CM/ECF system, which will send notice of electronic filing to Assistant United States Attorney Justin E. Blankenship, counsel of record for the United States, and that a copy was further provided to United States Probation Officer William Clay Weaver.

/s/ Michael B. Fox
Michael B. Fox

# EXHIBIT LIST

**Exhibit A: Letters of Support**

1. Letter of Rachel Howard (mother)
2. Letter of Lisa Newsome (aunt)
3. Letter of Michael Newsome (uncle)
4. Letter of Angela Hensley (friend)
5. Letter of Pastor Steven Skidmore
6. Letter of Rev. Ricky Harris
7. Letter of Eddie and Barbara Hampton (fellow church members)
8. Letter of Stephanie Hampton (friend and fellow church member)
9. Letter of Tasha Howard (friend)
10. Letter of Tiffany Napier (friend)
11. Letter of Christopher Noe ( Childhood friend)